**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
|  | x | |
|  | : | |
| MITSUBISHI TANABE PHARMA CORPORATION, | : | Honorable Claire C. Cecchi, U.S.D.J. |
|  | : | |
|  | : | Civil Action No. 25 CV 16680 (CCC)(LDW) |
| Plaintiff, | : | |
|  | : | |
| v. | : | |
|  | : | **Return Date: December 15, 2025** |
| LUPIN LIMITED and LUPIN | : | |
| PHARMACEUTICALS, INC., | : | **Oral Argument Requested** |
|  | : | |
| Defendants. | : | |
|  | x | |

---

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF**
**THEIR MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE**

---

OF COUNSEL:

Kurt A. Mathas (*pro hac vice* forthcoming)
Alison M. King (*pro hac vice* forthcoming)
Brian L. O'Gara (*pro hac vice* forthcoming)
WINSTON & STRAWN LLP
300 N. LaSalle Dr.
Suite 4400
Chicago, Illinois 60654

Claire A. Fundakowski (*pro hac vice* forthcoming)
WINSTON & STRAWN LLP
1901 L. Street, N.W.
Washington, DC 20036
(202) 282-5000

MIDLIGE RICHTER, LLC
645 Martinsville Road
Basking Ridge, New Jersey 07920
(908) 626-0622
James S. Richter

*Attorneys for Defendants,*
*Lupin Ltd. and Lupin Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................... 1

II.  FACTUAL BACKGROUND .............................................................................. 4

    A.   The Delaware Actions ............................................................................ 4

    B.   The New Jersey Actions ......................................................................... 6

    C.   The Motions to Transfer ......................................................................... 7

III. ARGUMENT ..................................................................................................... 7

    A.   This Action Could Have Been Brought in Delaware ............................. 7

    B.   The First-Filed Rule Favors Transfer to Delaware ............................... 9

    C.   The Interests of Justice and Convenience Are Best Served by Transfer
        to Delaware ........................................................................................... 12

        1.   The balance of private interest factors weighs in favor of transfer ........... 13

        2.   The balance of public interest factors weighs in favor of transfer ............ 16

            (a)   The practical considerations that could make the trial easy,
                expeditious, or inexpensive weigh strongly in favor of
                transfer. ................................................................................... 16

            (b)   The relative administrative difficulty in the two fora favors
                transfer to Delaware. .............................................................. 19

            (c)   The remaining public interest factors are neutral. ................. 20

        3.   The *Jumara* Factors Weigh in Favor of Transfer .................................... 20

IV. CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*COA Network, Inc. v. J2 Glob. Commc'ns, Inc.*,
No. 09-6505, 2010 WL 2539692 (D.N.J. June 17, 2010)........................................................20

*Coyoy v. United States*,
526 F. Supp. 3d 30 (D.N.J. 2021) .............................................................................................9

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925 (3d Cir. 1941)......................................................................................................9

*E.E.O.C. v. Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988)......................................................................................................9

*Eagle View Techs., Inc. v. GAF Materials, LLC*,
594 F. Supp. 3d 613 (D.N.J. 2022) .........................................................................................16

*Elecs. for Imaging, Inc. v. Coyle*,
394 F.3d 1341 (Fed. Cir. 2005)................................................................................................9

*Genentech, Inc. v. Eli Lily and Co.*,
998 F. 2d 931 (Fed. Cir. 1993)..................................................................................................9

*Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement
Workers of Am.*,
502 F. App'x 201 (3d Cir. 2012) .............................................................................................12

*Intendis, Inc. v. River's Edge Pharm., LLC*,
No. 11–2838, 2011 WL 5513195 (D.N.J. Nov. 10, 2011)........................................................14

*Job Haines Home for the Aged v. Young*,
936 F. Supp. 223 (D.N.J. 1996) ................................................................................................8

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)............................................................................................. *passim*

*Magnacross LLC v. GE MDS LLC*,
No. 20-964, 2020 WL 6581530 (D. Del. Nov. 10, 2020)........................................................10

*Mahmoud v. Rite Aid Corp.*,
No. CIV.A. 2:11-CV-06363, 2012 WL 3560645 (D.N.J. Aug. 16, 2012) ..............................10

*Micron Tech., Inc. v. Mosaid Techs, Inc.*,
518 F.3d 897 (Fed. Cir. 2008)................................................................................................11

*Mitsubishi Tanabe Pharma Corp. v. Sandoz Inc.*,
   C.A. No. 2-25-cv-16664 (D.N.J.) ...............................................................................11

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997)..................................................................................17

*In re Samsung Elecs. Co., Ltd.*,
   2 F.4th 1371 (Fed Cir. 2021) ...............................................................................12, 18

*Shutte v. Armco Steep Corp.*,
   431 F.2d 22 (3d Cir. 1970)............................................................................................8

*Stewart v. First Student*,
   639 F. Supp. 3d 492 (E.D. Pa. 2022) .........................................................................14

*Tekno Prods., Inc. v. Glove Trends Inc.*,
   No. CV1900091SDWESK, 2019 WL 7184544 (D.N.J. Dec. 26, 2019) ...................11

*Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*,
   No. CV 22-7528, 2023 WL 1883357 (D.N.J. Feb. 10, 2023)........................... *passim*

*Yang v. Odom*,
   409 F. Supp. 2d 599 (D.N.J. 2006) ...............................................................................8

**Statutes**

28 U.S.C. § 1331....................................................................................................................8

28 U.S.C. § 1338(a) ...............................................................................................................8

28 U.S.C. § 1400....................................................................................................................8

28 U.S.C. § 1400(b) ...............................................................................................................8

28 U.S.C. § 1404(a) ...............................................................................................2, 7, 12, 13

Hatch-Waxman Act ...........................................................................................................1, 12

## I.      INTRODUCTION

Defendants Lupin Limited and Lupin Pharmaceuticals, Inc. (collectively "Defendants" or "Lupin") seek to have this case transferred to the District of Delaware where they have been actively litigating for nearly a year against Plaintiff Mitsubishi Tanabe Pharma Corporation ("Plaintiff") on related patents covering the same drug product.

Since 2023, Plaintiff has been engaged in patent infringement litigation brought under the Hatch-Waxman Act related to the drug product Radicava ORS® ("Radicava"). The active ingredient in Radicava is edaravone. Plaintiff initially filed suit against Cipla Limited and Cipla USA, Inc. (collectively "Cipla") in the District of Delaware in July 2023 on the three patents then listed in the Orange Book for Radicava. ECF No. 1.[1] Over the next two years, Plaintiff would again and again choose Delaware as its venue of choice for litigation involving Radicava. This includes suing Apotex Corp. and Apotex Inc. (collectively "Apotex") in May 2024 on the patents then listed in the Orange Book for Radicava ORS (ECF No. 1, C.A. 1:24-cv-00549 (JLH) (D. Del.)); amending its Complaint in August 2024 to assert two additional patents listed in the Orange Book relating to Radicava against Cipla (ECF No. 92); suing Lupin in December 2024 on the patents then listed in the Orange Book for Radicava ORS (ECF No. 1, C.A. 1:24-cv-01423 (JLH) (D. Del.)); filing a second suit in Delaware against Lupin to assert one additional patent subsequently listed in the Orange Book for Radicava ORS in July 2025 (ECF No. 1, C.A.1:25-cv-00828 (JLH) (D. Del.)); and again suing Cipla in July 2025 asserting the same subsequently listed patent related to Radicava (ECF No. 1, C.A. No. 1:25-cv-929 (JLH) (D. Del.)).

The parties have exchanged document discovery, agreed to scheduling orders, engaged in

---

[1] Unless otherwise indicated, all citations to docket entries herein are to the docket in the consolidated District of Delaware action with Civil Action No. 1:23-cv-759 (JLH).

repeated and prolonged negotiations to set a trial date, agreed to limitations on discovery, the number of asserted claims and prior art references, and for a protective order. The parties began claim construction in Delaware on the then-pending patents and are days away from beginning that process again with the inclusion of the later-added patents. Judge Hall and Magistrate Judge Burke have familiarized themselves with the case, the parties, and the issues during discovery hearings, proposed orders, and other submissions from the parties.

Then, after two years of litigation in Delaware—including a recently renegotiated scheduling order and the exchange of updated opening contentions—Plaintiff filed this suit in New Jersey on October 16 asserting additional patents covering the same Radicava drug product that it had repeatedly refused to add to the Delaware case.

This case should be transferred to Delaware to be resolved alongside the long-pending action there related to the same Lupin ANDA and the same Radicava drug product. The analysis is straightforward. First, all parties agree that Delaware is a proper destination for this case as it would have jurisdiction and be a proper venue for this matter. Second, both the Delaware case and this case involve the same parties and the same subject matter and, thus, transfer of this case to Delaware under the first-filed rule is warranted. Third, even if the Court declines to apply the first-filed rule, transfer is warranted under the relevant private and public interest factors when weighing a transfer under Section 1404(a). Specifically, none of the factors favor denial of transfer, but at least judicial economy, the state of the respective court's caseloads, and Defendants' preference of venue all support transfer.

Transfer is also appropriate on policy and fairness grounds. Plaintiff's actions since filing this suit make clear it has engaged in bad-faith gamesmanship to manipulate these proceedings to nullify its prior choice of Delaware as its venue and to engage in forum-shopping to this Court.

Days after this suit was filed, Plaintiff indicated that it intended to move to transfer the Delaware action to this Court and move to consolidate the actions to bring all eight asserted patents into one action in New Jersey. Plaintiff made good on its promise and filed a motion to transfer the Delaware action to this court for consolidation on October 29. ECF No. 147. Bringing all patents into the same action is exactly what Lupin had requested from Plaintiff for months in the Delaware action, and that Plaintiff had refused to do. Plaintiff claimed there that the two patents asserted in this action had too little overlap and the Delaware case was complex enough as is.

Its motion to transfer makes clear those reasons were pretextual and were simply excuses to preserve the two patents at issue here to use as a hook with which to drag all Delaware litigation into its new chosen forum.

If successful, Plaintiff will likely reap a windfall in the form of yet further, unnecessary delay in resolving the dispute and keeping Lupin's generic product off the market, and if nothing else, will force Lupin to expend substantial resources relitigating settled issues, and responding to new claims, theories, and discovery requests that Plaintiff agreed to forego in Delaware. This sort of gamesmanship should not be countenanced, and serves as an additional reason to grant Lupin's motion to transfer this case to Delaware, where it can be efficiently decided alongside the long-pending cases there with the expertise and familiarity the parties, the Delaware Court, and the local counsel have developed on the issues, technologies, and facts implicated by these cases.[2]

Accordingly, Lupin respectfully requests that this Court grant the motion to transfer this case to the District of Delaware.

---

[2] Counsel for Lupin understands that the other defendants with matters relating to Radicava patents pending in this District are also considering and/or intend to move to transfer their matters to Delaware as well, which if granted would result in a consolidated action there covering all parties and patents.

## II.    FACTUAL BACKGROUND

Lupin is a leading provider of generic pharmaceutical products to customers around the world, including in the United States. In 2024, Lupin submitted ANDA No. 219415 to the U.S. Food and Drug Agency ("FDA") seeking approval to market a generic version of the drug Radicava. ECF No. 1, ¶¶ 45–47, C.A. 1:24-cv-01423 (JLH) (D. Del.). On November 19, 2024, Lupin submitted a notice letter to Plaintiff stating its intent to market a generic version of Radicava before expiration of the five patents that were then listed in the Orange Book for Radicava. Those patents were U.S. Patent Nos. 10,987,341 ("the '341 patent"); 11,241,416 ("the '416 patent"); 11,478,450 ("the '450 patent"); 11,826,352 ("the '352 patent"), and 11,957,660 ("the '660 patent").

Plaintiff is the original NDA holder for Radicava. Radicava is a drug product with edaravone as the active ingredient that is used to treat ALS. The form of Radicava at issue in the patents asserted in the cases discussed below is an oral suspension, which was purportedly an improvement over a prior form of Radicava that was an injectable product. The patents at issue largely relate to this purported improvement in formulating and administering an oral suspension and do not claim a new or improved form of the active ingredient.

### A.    The Delaware Actions

Plaintiff filed against Cipla in the District of Delaware on July 12, 2023, alleging patent infringement of the '341, '416, and '450 patents. ECF No. 1, ¶¶ 1–2. That case was docketed as Case No. 1:23-cv-759. It then proceeded through the initial phases of fact discovery and the parties exchanged the initial round of claim construction briefing. Subsequently, Plaintiff listed two more patents in the Orange Book for Radicava: U.S. Patent Nos. 11, 826,352 ("the '352 patent") and 11,957,660 ("the '660 patent"). Plaintiff amended its Complaint against Cipla on August 30, 2024 to additionally assert the newly listed '352 and '660 patents.

Plaintiff had also filed suit in Delaware in May 2024 against the Apotex parties on the Radicava patents. ECF No.82 at 1. The Apotex matter had been consolidated by an order of the Court to Cipla's -759 action. ECF No. 87, ¶ 1.

Plaintiff then sued Lupin on December 30, 2024 in Delaware on the same five patents asserted against Cipla and Apotex. ECF No. 103 at 1. In February 2025, the parties in the consolidated -759 case agreed to stay the pending infringement contention deadline to permit the consolidation of the Lupin matter and to negotiate and implement a new scheduling order following consolidation. *Id.*

That process then dragged on for months. Plaintiff substituted counsel in April 2025, which largely restarted negotiations regarding trial date, discovery limitations, and limits on the number of asserted claims and prior art references. Adding to the delay was Plaintiff's listing of three new patents in the Orange Book for Radicava: U.S. Patent Nos. 12,194,025 ("the '025 patent"); 12,285,409 ("the '409 patent"); and 12,310,946 ("the '946 patent").

Specifically, all defendants asked Plaintiff to bring these three new patents into this case promptly so the new schedule under negotiation could account for those patents and avoid the need for future delays. Ex. 1 (March 25, 2025 Email from R. Niemeier to F. West requesting the '025 patent be added to the case); Ex. 2 (June 13, 2025 and June 17, 2025 emails from K. Mathas to K. Guerra inquiring whether Plaintiff will agree to add the '409 and '025 patents[3] to the case). Plaintiff agreed to assert the '409 patent, but refused to assert the '025 and '946 patents. Ex. 1 (March 31, 2025 Email from F. West to R. Niemeier refusing to add the '025 patent); Ex. 2 (June 18, 2025 Email from K. Guerra to K. Mathas agreeing to add the '409 patent, but not agreeing to

---

[3] Certain emails refer to the '409 and '025 patents as "the pop-up patents."

add the '025 patent).[4]

Following those discussions, Plaintiff filed second complaints against Lupin and Cipla in the District of Delaware, on July 3, 2025 and July 24, 2025, respectively, alleging infringement of the '409 patent. ECF No. 1, C.A.1:25-cv-828 (JLH) (D. Del.); ECF No. 1, C.A. No. 1:25-cv-929 (D. Del).

Faced with Plaintiff's refusal to assert the '025 and '946 patents, the parties proceeded to finalize a proposed scheduling order, which was entered on August 26, 2025 and consolidated all Delaware actions under the -759 case. ECF No. 129. The parties then proceeded to exchange infringement, invalidity, non-infringement, and validity contentions in August and September. Additional claim construction proceedings are set to begin this week.

**B.    The New Jersey Actions**

While the Delaware parties were negotiating a new consolidation and scheduling order following the suit against Lupin and the new listing of three more Orange Book patents for Radicava, Plaintiff filed suit on April 25, 2025 in this District against Shanghai Auzone (C.A. No. 2:25-cv-3226 (D.N.J.)) on the '341, '416, '450, '352, and '660 patents.

Then, on October 15 and 16, Plaintiff filed five additional actions in this District against Shanghai Auzone (C.A. No. 2:25-cv-16665 (D.N.J.)); Sandoz (C.A. No. 2:25-cv-16664) (D.N.J.)); Apotex (C.A. No. 2:25-cv-16679 (D.N.J)); Cipla (C.A. No. 2:25-cv-16677 (D.N.J.)); and the instant action against Lupin (C.A. No. 2:25-cv-16680 (D.N.J)). These cases asserted any of the eight Orange Book patents for Radicava not previously asserted against a defendant in a prior

---

[4] During these email exchanges in April, May, and June, the '946 patent had not yet been listed in the Orange Book. That occurred on June 20, 2025. Given Plaintiff's repeated refusal to add the '025 "Food Effect" Patent and the need to finalize a schedule, Defendants in the Delaware case did not repeat their request that the '946 patent, also a "Food Effect" Patent, be added to the case.

action. Thus, by October 16, 2025, all eight of the Orange Book patents were asserted, either in the District of Delaware or in this District, against each of the five Defendant groups.

The present action against Lupin in this District came just weeks after the parties exchanged opening contentions in the consolidated Delaware matter and months after Plaintiff refused to assert the '025 and '946 patents against Lupin in Delaware.

### C.    The Motions to Transfer

On October 23, Plaintiff requested to meet and confer regarding an anticipated motion to transfer the Delaware actions to this Court. The parties conferred on October 28. Lupin opposed the motion to transfer. During that meet-and-confer the parties also discussed motions by Lupin and the other Delaware defendants to transfer the newly filed New Jersey matters to Delaware for consolidation with the long-pending action there. On November 5, Plaintiff indicated it would oppose this motion.

On October 29, 2025, Plaintiff filed a motion to transfer the -759 action in Delaware to this Court and stated that, if transferred, Plaintiff seeks to consolidate the -759 action with the other actions related to Orange Book-listed Radicava patents in this District. ECF No. 147 at 2.

Lupin now files this motion and supporting memoranda seeking transfer of this case to Delaware for consolidation. Counsel for Lupin further understands that the Apotex, Cipla, Shanghai Auzone, and Sandoz defendants are also considering or already have moved to transfer their cases to Delaware as well.

### III.    ARGUMENT

### A.    This Action Could Have Been Brought in Delaware

A threshold inquiry in considering a motion to transfer a civil action is that the destination district must be a district "where [the action] might have been brought." 28 U.S.C. § 1404(a); *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). An action "might have been

brought" in a transferee district if that district has: "(1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006) (citing *Shutte v. Armco Steep Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). Here, there can be no dispute that this action might have been brought in Delaware.

First, the District of Delaware has subject-matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a). Second, there can be no dispute that the District of Delaware has personal jurisdiction over the parties in this case. The same parties here—Plaintiff and Lupin— were named by Plaintiff in the Delaware actions involving the same allegations—infringement of Plaintiff's Orange Book patents relating to Radicava by filing Lupin's ANDA. *See Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 n.5 (D.N.J. 1996) (finding jurisdiction in the transferee district was proper, where the transferee district "already exercised jurisdiction over these same defendants with respect to these same allegations.").

Third, venue is proper in the District of Delaware. Venue is proper in a patent infringement action in a district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Plaintiff has filed suit against Lupin two separate times in the District of Delaware relating to patents involving Radicava—the same drug at issue with the patents asserted in this case. *See* ECF No. 1; ECF No. 1, C.A. No. 1:25-cv-828 (JLH) (D. Del.). In pleadings in both cases, Plaintiff alleged venue was proper and Lupin did not contest this allegation.

In those cases, Plaintiff alleged that venue was proper under Section 1400 because Lupin Pharmaceuticals, Inc. is a Delaware corporation and because Lupin allegedly committed acts of infringement in Delaware—by intending to manufacture, offer for sale, sell, distribute, or market its generic version of Radicava in Delaware pending final FDA approval of its ANDA. ECF No.

- 8 -

1, ¶¶ 30–39, 1:24-cv-01423 (JLH) (D. Del.); ECF No. 1, 1:25-cv-828 (JLH) (D. Del.), ¶¶ 30–39.

Accordingly, the District of Delaware is a venue where this action could have been brought.

## B.   The First-Filed Rule Favors Transfer to Delaware

Both the Third Circuit and Federal Circuit apply what is known as the "first-filed" rule. The first-filed rule holds that "the party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). In other words, when two cases involving similar subject matter are pending in different venues, the first-filed action generally has priority. In the context of a motion to transfer, the first-filed rule favors transfer of the later-filed action to the district where the first-filed litigation is pending for potential consolidation. *Coyoy v. United States*, 526 F. Supp. 3d 30, 43 (D.N.J. 2021) (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). While the first-filed rule is not a mandate, deviations from the rule are appropriate only where there are "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Coyoy*, 526 F. Supp. 3d at 43.

"The Federal Circuit applies the general rule favoring the forum of the first-filed case 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" *Id*. (citing *Genentech, Inc. v. Eli Lily and Co*., 998 F. 2d 931, 937 (Fed. Cir. 1993)). The Federal Circuit has recognized that its "precedent … favors the first-to-file rule in the absence of circumstances making it 'unjust or inefficient' to permit a first-filed action to proceed to judgment." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005). Here, the first-filed rule supports transfer.

First, this case involves the same parties as the Delaware case—Plaintiff and Defendants Lupin Limited and Lupin Pharmaceuticals, Inc. *See Coyoy*, 526 F. Supp. 3d at 43 (holding that the

first-filed rule is properly invoked if the cases involve "the same parties and the same issues"). While it is true that the first-filed Delaware case has been consolidated to include additional unrelated defendants that Plaintiff has also sued, those additional defendants are irrelevant to the resolution of the disputes between Plaintiff and Lupin. *See Mahmoud v. Rite Aid Corp.*, No. CIV.A. 2:11-CV-06363, 2012 WL 3560645, at *5 (D.N.J. Aug. 16, 2012) (finding the first-filed rule applied despite differing defendants between the two cases because "[u]ltimately, the facts pled by Plaintiff ... focus on [the common defendant between the two actions].")

Second, both this case and the Delaware case involve the same issues. Both cases involve the same factual allegations: the filing of the same ANDA by Lupin and the same drug product. *Compare* ECF No. 1, C.A. 1:24-cv-1423, ¶¶ 45–115 *and* ECF No. 1, C.A. 1:25-cv-828 (JLH) (D. Del.), ¶¶ 41–61, *with* ECF No. 1, 2:25-cv-16680 (D.N.J.), ¶¶ 37–62. Plaintiff, in its motion to transfer the Delaware action to this Court, claims that the patents asserted here (identified in the motion as "Food Effect Patents") "involve different patents, from a different family, concerning different technology, with no overlapping inventors." ECF No. 147 at 19. While it is true the Food Effect Patents asserted here have different inventors and are from a different family from the patents asserted in Delaware (identified in Plaintiff's motion as "Formulation Patents"), it is false that they concern different technology. Both sets of patents relate to edaravone formulations and methods of orally administering edaravone for the treatment of ALS.

While not in the context of the first-filed rule, this Court has previously noted in the context of a motion-to-transfer analysis that two cases involving related patents, the same underlying technology, the same ANDA, and the same ANDA products can constitute the same or similar subject matter. *See Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, No. CV 22-7528, 2023 WL 1883357, at *6 (D.N.J. Feb. 10, 2023) (citing *Magnacross LLC v. GE MDS LLC*, No. 20-964, 2020

WL 6581530, at *8 (D. Del. Nov. 10, 2020)). Other courts in this District have also held that two cases relate to the same issues even where one case relates only to trademark claims, while the other relates to both trademark and patent issues. *See Tekno Prods., Inc. v. Glove Trends Inc.*, No. CV1900091SDWESK, 2019 WL 7184544, at *7 (D.N.J. Dec. 26, 2019).

Moreover, Plaintiff's contentions that the Food Effect Patents involve different issues than the Formulation Patents should be afforded no weight in view of the fact that Plaintiff's own motion to transfer explicitly states that, if granted, it intends to seek consolidation of this case involving the Food Effect Patents with the Delaware case involving the Formulation Patents. ECF No. 147 at 2. Indeed, Plaintiff has already asserted both Food Effect and Formulation Patents in a single case against another Defendant. *See Mitsubishi Tanabe Pharma Corp. v. Sandoz Inc.*, C.A. No. 2-25-cv-16664 (D.N.J.). Plaintiff's own actions and admissions thus make clear that both this case and the Delaware case against Lupin involve the same issues.

While Plaintiff may argue that the first-filed rule does not apply because the actions here involve different issues, the Federal Circuit has made clear that it examines alleged differences in issues in the second-filed case with scrutiny:

> This court also gives little weight to the district court's second reason, namely that the second-filed infringement action is broader than the first filed declaratory judgment action. This reason carries little weight because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction. If, as in this case, a patent holder could simply name another defendant or add a few additional claims to the later filed infringement, then the Supreme Court's more lenient standard for the declaratory judgment plaintiff would lose its primary intended effect. Accordingly, although the relationship between the two competing lawsuits remains a consideration, this consideration cannot be given undue weight because it is easily manipulated.

*Micron Tech., Inc. v. Mosaid Techs, Inc.*, 518 F.3d 897, 903 (Fed. Cir. 2008). As the court in *Micron* warned, here, Plaintiff's later-filed cases were filed in an attempt to manipulate venue to

- 11 -

try and force a transfer. "But in ascertaining proper venue, [the Court is] not bound by a plaintiff's efforts to manipulate venue." *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1377 (Fed Cir. 2021). Finally, none of the exceptions to the first-filed rule are applicable in this case. Both cases at issue are straightforward Hatch-Waxman patent cases. And, as discussed below, the balance of convenience factors does not favor this later-filed action. *Cf. Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012) (noting balance of convenience favoring the second-filed action is a basis for an exception).

Nor can there be any argument that Defendants have engaged in inequitable conduct, bad faith or forum-shopping. It was Plaintiff that filed each action. If any party has unclean hands here, it is Plaintiff. Plaintiff chose to file two lawsuits asserting six Radicava patents against Lupin in Delaware and has prosecuted the Delaware cases for more than two years before suddenly abandoning its chosen forum in Delaware for this District. Moreover, Lupin requested several times that Plaintiff add the then-listed Food Effect Patents to the pending Delaware case and was refused. Exs. 1, 2. Now—fewer than three months later—Plaintiff asserts those patents here while also attempting to move the other asserted patents in Delaware to this Court with the ultimate goal of consolidating them into a single action against Lupin. *See* ECF No. 147 at 2.

No exception to the first-filed rule is warranted and, if anything, Plaintiff's litigation tactics should weigh against any exception to the rule. Thus, this second-filed case should be transferred to the District of Delaware for consolidation with the first-filed case.

### C.    The Interests of Justice and Convenience Are Best Served by Transfer to Delaware

Even if the Court finds the first-filed rule is inapplicable here, transfer is still warranted pursuant to Section 1404(a) because the District of Delaware is a convenient venue for the parties and transfer is in the interest of justice. The Third Circuit has enumerated several private and public

interests that courts may consider when deciding whether to grant a motion to transfer under Section 1404(a). *Jumara*, 55 F.3d at 879–80. These private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

The balance of these factors, when applied to the facts of this case, support transfer of this case to Delaware.

### 1. The balance of private interest factors weighs in favor of transfer

The first factor—plaintiff's forum preference—is normally entitled to deference by courts; however, this deference is limited where a plaintiff's chosen forum is not its home forum. *Vanda Pharms.*, 2023 WL 1883357, at *4 (collecting cases). Here, New Jersey is not Plaintiff's home forum. Plaintiff is a foreign corporation organized and primarily based in Japan. *See* ECF No. 1 at ¶ 13. Thus, this factor is entitled to little weight and is at most neutral in the transfer analysis. *See Vanda Pharms.*, 2023 WL 1883357, at *4 (finding plaintiff's choice to file in New Jersey did not weight against transfer where it was based in Delaware).

Moreover, this case is not a typical dispute between a plaintiff who filed a suit in its preferred venue and a defendant who wishes to transfer to a venue of their choice. Rather, it is *Plaintiff* that chose Delaware as the venue for its Radicava litigation for two years, and *Plaintiff*

that—apparently now dissatisfied with Delaware—chose New Jersey as its new preferred venue. Thus, *both* choices at issue here are Plaintiff's and its forum-shopping is entitled to no deference. Indeed, courts in the Third Circuit have recognized that it is a plaintiff's ***original choice*** of forum that takes precedence. *See, e.g.*, *Stewart v. First Student*, 639 F. Supp. 3d 492, 499 (E.D. Pa. 2022) ("*Jumara* makes plain that this factor considers 'plaintiff's forum preference as manifested in the *original* choice.'"). Here, Plaintiff manifested its original choice for the District of Delaware and thus, its newfound preference for this District can be disregarded.

The second private factor—defendants' preference of forum—weighs in favor of transfer. Lupin seeks to have this case transferred to Delaware where it has been litigating against Plaintiff on related patents for nearly a year. *See Intendis, Inc. v. River's Edge Pharm., LLC*, No. 11–2838, 2011 WL 5513195, at *3 (D.N.J. Nov. 10, 2011) (finding factor two weighed in favor of transfer, where the plaintiffs had "demonstrated their willingness to litigate there" by filing a related action in that forum). Lupin has expended significant resources litigating related cases in Delaware and its preference to leverage those efforts by moving this case to Delaware to more efficiently litigate this case favors transfer.

The third factor—whether the claim arose elsewhere—is neutral. For this factor, the court may consider where the operative facts concerning the "center of gravity" relating to the accused product occurred—which in patent infringement cases is "the location of the product's development, testing, research and production, as well as where marketing decisions are made." *Vanda Pharms.*, 2023 WL 1883357, at *5 (internal citation omitted).

Here, New Jersey cannot be the center of gravity for this case. On information and belief, much of the research and development on the asserted patents occurred in Japan, and most or all of the inventors are located in Japan. Moreover, much of the development of Lupin's ANDA and

ANDA product occurred in India, where Lupin's research and development functions are primarily based. Where the operative facts occurred outside of the two districts at issue, this Court has found the factor to be neutral. *Vanda Pharms.*, 2023 WL 1883357, at \*5.

The fourth factor—convenience of the parties as indicated by their relative physical and financial condition—is neutral. While both parties have a U.S. agent with a location in New Jersey, neither party has substantial operations relevant to the issues to be litigated in either forum. That is, the majority of development and regulatory capabilities of the parties are located outside the United States. Moreover, both districts are located in relative proximity. The parties are large and sophisticated entities with sufficient resources to litigate in either forum. *See id.* Thus, New Jersey will be no more convenient to the parties based on their physical and financial condition than Delaware.

The fifth factor—convenience of the witnesses—need not be considered or is, at most, neutral. The Third Circuit has found this factor should only be considered to the extent a witness may actually be unavailable for trial. *Jumara*, 55 F.3d at 879. Based on Lupin's present understanding at this early stage of this action, there is no basis to believe a witness from either party would be unavailable to appear in either venue for trial. Moreover, the majority of witnesses for both Plaintiff and Lupin are likely to reside outside the United States and any difficulty appearing for trial would apply equally whether the action was in New Jersey or Delaware.

The sixth and final factor—location of books and records—is also neutral. Based on Lupin's present understanding, most relevant records or books are likely to be electronically stored or physically located outside of the United States. Thus, it would not be any more convenient to produce these materials in this District as opposed to Delaware.

Thus, the private interest factors in sum weigh in favor of transfer. *Accord Vanda Pharms.*,

2023 WL 1883357, at *5 (finding private factors weigh in favor of transfer where each factor is in favor of transfer or neutral).

### 2. The balance of public interest factors weighs in favor of transfer

The public interest factors are largely neutral. However, the second and third factors weigh strongly in favor of transfer.

#### (a) The practical considerations that could make the trial easy, expeditious, or inexpensive weigh strongly in favor of transfer.

The second factor—practical considerations that could make the trial easy, expeditious, or inexpensive—weighs heavily in favor of transfer to Delaware. When considering whether there are practical considerations that weigh in favor of transferring a particular case, "courts in this Circuit have frequently held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue specifically, such a transfer allows for pretrial discovery to be conducted more efficiently, saves witnesses' time and money, both with respect to pretrial and trial proceedings, avoids duplicative litigation, thereby eliminating unnecessary expense to the parties, and at the same time serves the public interest and avoids inconsistent results." *Eagle View Techs., Inc. v. GAF Materials, LLC*, 594 F. Supp. 3d 613, 623 (D.N.J. 2022) (citation modified).

Here, related litigation has been pending in Delaware involving the same parties for more than two years. These cases involve patent infringement claims related to the same Lupin ANDA and ANDA product at issue here, and the patents in Delaware and in this case both relate to the same Radicava drug product. Transferring this case to Delaware to be consolidated with the pending litigation there will allow pretrial discovery, which will undoubtedly have significant overlap between the cases given their similar factual predicates, to proceed more efficiently. It will also reduce duplicative proceedings, eliminate unnecessary expense, and eliminate the risk of

conflicting or inconsistent results.

While Plaintiff is expected to argue that the two Food Effect Patents asserted here are not part of the same patent family and lack common inventors with the Formulation Patents asserted against Lupin in Delaware, that is not a sufficient basis to overcome the efficiencies weighing in favor of transfer. There is substantial factual overlap as both sets of patents deal with treatment of ALS using Radicava. Even if the issues and underlying facts are not entirely overlapping, there will be substantial overlap and thus substantial efficiency benefits by transferring this case to Delaware where that court can leverage its years of experience with these issues. *See Vanda Pharms.*, 2023 WL 1883357, at *6 (finding this factor favors transfer where the transferee court had years of experience with prior litigation covering the same drug product and involving similar infringement allegations even where the prior case in the transferee venue had already been completed and was not co-pending); *see also Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("[Where] several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues.").

Further, any argument by Plaintiff that there is no overlap in the subject matter or that there would be no efficiency in combining this case with the Delaware litigation is belied by its own contention in its pending motion to transfer the Delaware cases to this Court for the sake of efficiency. Plaintiff plainly admits there that, if its motion is granted, it intends to move to consolidate both cases against Lupin into one action in this Court. ECF No. 147 at 2.

And to the extent Plaintiff concedes there would be efficiency in consolidating this action with the Delaware actions but argues that this factor weighs in favor of making that consolidation here in New Jersey, that is also wrong. The parties have already exchanged significant discovery

- 17 -

in Delaware as well as spent months negotiating scheduling orders, limits on discovery, limits on claims and defenses, and a protective order. All of that would be directly applicable to this case if transferred even if there are some unique substantive issues between the cases. Compare that to Plaintiff's preferred outcome of consolidation in New Jersey where no litigation involving these patents has gone beyond the pleading stage and the efforts undertaken by Lupin in Delaware would need to be repeated, wasting time and resources and likely burdening the Court with disputes already resolved in Delaware.

And as to Plaintiff's expected argument that New Jersey is the only venue where all eight patents are currently pending and thus the Delaware cases should be transferred here rather than the reverse, that argument deserves no weight at all because that fact is solely the result of Plaintiff's litigation tactics and attempt to manipulate venue. Indeed, such efforts to manipulate venue can and should be *disregarded* in the transfer analysis. *See In re Samsung*, 2 F.4th at 1377 ("[T]he Supreme Court and this court have repeatedly assessed the propriety of venue by disregarding manipulative activities of the parties.").

Plaintiff refused, despite Lupin's requests, to assert the Food Effect Patents in the Delaware litigation, apparently for the purpose of asserting them here as a basis to relocate all proceedings to this venue and to obtain a second bite at issues already resolved in Delaware. Plaintiff's attempt to delay and relitigate its disputes against Lupin using this Court should not be rewarded. Similar conduct was rebuffed by this Court in *Vanda* where the plaintiff, having lost at trial in Delaware, filed another suit on the same drug product using patents in the same family in New Jersey in an attempt to obtain a remedy denied to it by Delaware. *See Vanda Pharms.*, 2023 WL 1883357, at *6. Accordingly, this factor weighs strongly in favor of transferring this case to Delaware.

- 18 -

**(b)**    **The relative administrative difficulty in the two fora favors transfer to Delaware.**

The third factor—relative administrative difficulty in the two fora resulting from court congestion—favors transfer. Both New Jersey and Delaware are busy districts that handle a large number of patent suits. Each district handles a large number of Hatch-Waxman matters and the judges in each fora are similarly experienced with the issues and procedures in these matters and are efficient at presiding over them.

Indeed, the median time to trial for a patent action is extremely similar in both districts: 29 months in this District and 28 months in the District of Delaware. Ex. 3 (Docket Navigator Time to Trial Statistics). Thus, this factor is at least neutral. *See Vanda Pharms.*, 2023 WL 1883357, at *5. From publicly available data on Lex Machina, however, this Court currently has roughly **11,500 more** civil cases on its docket than Judge Hall in the District of Delaware. Ex. 4. In fact, this Court has about **10,000 more** civil cases currently pending than are pending in the *entire District of Delaware. Compare id.*, *with* Ex. 5. Thus, caseload statistics support transfer.

This factor further weighs in favor of transfer because the parties are not starting from zero. As discussed above for the second factor, the parties have litigated for more than two years in Delaware and have expended extensive time and energy negotiating a schedule, limitations on discovery, and a protective order. These procedural accomplishments in the Delaware cases would be directly applicable to this case if transferred. This would reduce potential burden on the presiding court by reducing the number of potential procedural disputes that may require judicial resolution and could allow the parties to speed through the early phases of this case more quickly than in a completely new matter. Thus, this matter is likely to impose less burden on already busy courts if sent to Delaware and to proceed more quickly to trial there, and thus this factor weighs in favor of transfer.

**(c)** **The remaining public interest factors are neutral.**

The first factor—enforceability of the judgment—and sixth factor—familiarity of the trial judge with applicable state law in diversity cases—are neutral because this case arises under a federal question. *Vanda Pharms.*, 2023 WL 1883357, at *5. The fourth factor—local interest in deciding local controversies—and fifth factor—public policies of the fora—are neutral because neither Delaware nor New Jersey have a particular interest in resolving patent infringement disputes and no District-specific public policies are implicated. *COA Network, Inc. v. J2 Glob. Commc'ns, Inc.*, No. 09-6505, 2010 WL 2539692, at *5 (D.N.J. June 17, 2010) ("Patent infringement lawsuits are matters of national concern that are not 'local controversies,' nor do they implicate the public policies of any one forum.").

### 3. The *Jumara* Factors Weigh in Favor of Transfer

The private interest factors are neutral or, in the case of the first and second factors, weigh in favor of transfer. Likewise, the public interest factors are neutral, or in the case of the second and third factors, strongly in favor of transfer to Delaware. Thus, the balance of these factors weighs strongly in favor of transfer to Delaware.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and transfer venue to the District of Delaware.

MIDLIGE RICHTER LLC
*Attorneys for Defendants,*
*Lupin Ltd. and Lupin Pharmaceuticals, Inc.*

By:       s/ James S. Richter
         James S. Richter
         jrichter@midlige-richter.com

Dated: November 12, 2025

*OF COUNSEL:*

Kurt A. Mathas (*pro hac vice* forthcoming)
Alison M. King (*pro hac vice* forthcoming)
Brian L. O'Gara (*pro hac vice* forthcoming)
WINSTON & STRAWN LLP
300 N. LaSalle Dr.
Suite 4400
Chicago, Illinois 60654
(312) 558-5600
kmathas@winston.com
amking@winston.com
bogara@winston.com

Claire A. Fundakowski (*pro hac vice* forthcoming)
WINSTON & STRAWN LLP
1901 L. Street, N.W.
Washington, DC 20036
(202) 282-5000
cfundakowski@winston.com